STURE A. HULTBERG & another *vs.* LOUIS A. TRUEX & another.

Worcester. March 5, 1962. — May 18, 1962.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Negligence,* Invited person, Street sweeping machine, Contributory, Motor vehicle, Imputed. *Way,* Private: invitee. *Evidence,* Evidence binding a party.

Evidence warranted a finding that the operator of an automobile and his wife accompanying him therein, while on a private road on land of the operator's employer on their way to the employer's plant so that the operator could get his pay and working clothes after having been shopping with his wife, were both invitees of the employer. [418]

One hired by an owner of land to sweep a private way thereon with a street sweeping machine had a duty to exercise due care in the operation of the machine toward persons travelling on the way as invitees of the landowner. [418]

Evidence of the circumstances in which a street sweeping machine, operated at a time when its sprinkler system was not in good working order, raised a large cloud of dust in which an automobile ran into the sweeper warranted a finding of negligence on the part of the operator of the sweeper toward the operator and an occupant of the automobile. [418]

In an action by the operator of an automobile against the operator of a street sweeping machine, the plaintiff was bound by his own testimony that he observed a large cloud of dust covering the road ahead of him and moving slowly along it, that he could not see ahead of him when he drove into the cloud of dust, and that he could not see the sweeper therein until after the automobile had run into the sweeper; and as matter of law the plaintiff was barred by contributory negligence from recovering for injuries sustained in the collision. [418–419]

Negligence of the operator of an automobile in driving into a large cloud of dust in which he could not see ahead and the automobile ran into a street sweeping machine was not to be imputed to his wife, who had been riding on the front seat of the automobile with him, in an action by them against the operator of the sweeper for injuries sustained in the collision, nor was a ruling as matter of law that the wife herself was guilty of contributory negligence required on the evidence.   [419]

Tort.   Writ in the Central District Court of Worcester dated February 25, 1958.

Upon removal to the Superior Court the action was tried before *Constantino*, J., a District Court judge sitting under statutory authority.

*Thomas S. Carey* for the plaintiffs.

*Richard G. Crotty* for the defendants.

Whittemore, J.   The plaintiffs, Elizabeth M. and Sture A. Hultberg, excepted to the direction of verdicts for the defendants in this action for personal injuries sustained by Elizabeth, and personal injuries, property damage, and consequential damages sustained by Sture, on March 15, 1957, when an automobile owned and operated by Sture, in which Elizabeth, his wife, was a passenger, was in collision with a street sweeping machine operated by the defendant Louis A. Truex and owned by the defendant Edwin E. Truex.   The plaintiffs have not argued their evidential exceptions.

There was evidence of these facts: The collision occurred on Shore Drive, a private street in Worcester, located on land owned by Norton Company (Norton).   The way was built initially for entrance to and exit from Norton's plant but for seventeen years it had been "made available to public transport"; Norton had "reserved the right to control"; it is "heavily travelled"; the "public in general uses . . . [it] without any restriction whatsoever." Norton had "no formal policy . . . in regard to public use of Shore Drive; . . . the custom grew up over a period of years, by the citizens . . . to use . . . [it] for their own purposes," and Norton made no objection to its use by anyone.   Norton's "primary interest in . . . having Shore

Drive was for the employees to travel over it . . . . Although the public was permitted to use . . . [it] Norton . . . reserved the right of control.'' On August 28, 1956, on recommendation of counsel a sign was posted at the entrance to the drive which read: ''To all persons using this way: Since this way is maintained by the Norton Company, hereinafter referred to as 'the Company' at its own expense and on its own land and for the sole use and convenience of its employees and agents; and whereas the purpose of this action is to comply with the provisions of General Laws (Ter. Ed.) Chapter 187, Section 3, in order to prevent any and all persons from acquiring an easement in this land by any use or enjoyment whatsoever of this way which is adverse to the company's ownership of this land, you are hereby notified that the company intends to prevent the acquisition of any right, interest or easement by any person, class of person, city or public body or persons operating under a franchise granted by any public authority to pass under, over or through the premises of the company by means of this way. Norton Company.'' Norton's ''employees and their families have been using . . . [the drive] as a matter of entrance and egress from the Norton Company and the beach which abuts Shore Drive . . . [which] non-employees . . . are not permitted to use.'' The drive is of black top construction and resembles the ordinary city public way.

Sture, an employee of Norton, left the plant about 3 P.M. and went home; he then went shopping with his wife and when the accident happened he was ''on his way to [Norton's] Plant 7 . . . to get his pay and working clothes.''

While Sture was traveling in the right lane, easterly, at about twenty-five miles per hour, his attention (as he testified) was attracted to a large cloud of dust, about fifty feet wide across Shore Drive, extending about ten or fifteen feet on the north side of the drive and about ten feet on the south side; it was fifteen to eighteen feet high; this cloud was moving easterly in the direction in which he was moving; it was moving very slowly away from him. Sture

slowed down; he did not apply his brakes but took his foot off the accelerator; he moved into the cloud of dust at about fifteen miles per hour. Three cars going west came out of the cloud of dust. Sture knew there was an entrance to the beach about fifteen feet on the opposite side of the cloud. As he started into the cloud he could not see that entrance; he could not see through the cloud. He went into the cloud for about ten feet before hitting the sweeper; when his motor vehicle struck the sweeper, he could not see it. "[H]e proceeded ten feet into the cloud of dust without being able to see ahead of him." "[H]e could not see anything until about three to four minutes after the operator shut the sweeper off and he found out he had struck a street sweeper."

Elizabeth, as she testified, was in the right hand seat of the car beside her husband; "she saw a cloud of dust coming up"; Sture slowed down from twenty or twenty-five miles per hour to "very, very slow and the dust got very heavy as they drew closer"; "we did not see anything at all." At no time prior to the collision did she see the sweeper. About forty feet from the dust, she said to Sture "there is dust up ahead there . . . dust coming from somewhere; . . . when they were ten feet from the dust they were going about fifteen miles per hour and she could not see through [the dust]" as it was getting heavier and heavier as they approached it. She could not see through the windshield as they entered the dust; she "did not warn her husband of the dust as they approached it."

There was evidence from which the jury could have found that water orifices in the sprinkling system on the sweeper had not been cleaned as good practice required and that, had the sprinkling system been in good working order and in use, there would have been less of a dust cloud so that the machine would not have been entirely obscured. Louis testified, inter alia, that he was going about two to four miles per hour; he observed the approaching car at various intervals; the machine is seven feet high at its highest point and the driver extends about three feet above the

machine; he did not blow his horn as he saw the automobile approaching, nor did he "holler"; the machine made "considerable noise" which would have prevented his being heard if he had hollered; he was sweeping the drive according to directions of Norton received by his father who was paid for the work; the sprinkler system was in use.

1.  The jury could have found that Sture and his wife were on the private way by invitation of the owner. We do not reach the issue of an invitation to the public. See *Nickerson* v. *Boston & Maine R.R.* 342 Mass. 306, 311–312. Norton's notice asserted that the way was maintained "for the sole use and convenience of its employees and agents." It could have been found it was convenient for Sture, Norton's employee, to return to the plant accompanied by his wife. The invitation to Sture to use the way for his convenience (*Sweeney* v. *Old Colony & Newport R.R.* 10 Allen, 368, 373–374) could have been found to include his wife in these circumstances. The plaintiffs in relation to Norton were invitees and even if the defendants could have stood in Norton's shoes in respect of them, which we do not intimate (see *Moore* v. *Worcester Insulation Co. Inc.* 338 Mass. 44, 45; compare *Boutlier* v. *Malden,* 226 Mass. 479; *Sarna* v. *American Bosch Magneto Corp.* 290 Mass. 340), the resulting duty would have been to exercise due care.

2.  The jury could have found that the defendant Louis was negligent. Louis' negligence was of course imputable to his principal. *Dunn* v. *Old Colony St. Ry.* 186 Mass. 316. *Rego* v. *Thomas Bros. Corp.* 340 Mass. 334, 335.

3.  Sture is bound by his statement of what he observed when he acted. *Laffey* v. *Mullen,* 275 Mass. 277, 278. *Germaine* v. *Boston & Albany R.R.* 298 Mass. 501, 504. *Fraser* v. *Fraser,* 334 Mass. 4, 6. *McLucas* v. *Boston & Maine R.R.* 335 Mass. 762. *Hannon* v. *Hayes-Bickford Lunch Sys. Inc.* 336 Mass. 268, 273.

It is inescapable that Sture chose to risk the unknown when he drove into the cloud of dust. He observed that the cloud was confined to the road and its sides and moving slowly ahead. This was notice to any reasonable man that the cause of the dust might be within the cloud.

We agree with the defendants that Sture's position was like that of plaintiffs who grope in the dark, and are held barred by their own negligence. *Benton* v. *Watson,* 231 Mass. 582. *Lanstein* v. *Acme White Lead & Color Works,* 285 Mass. 328, 331–332. *Osgood* v. *Therriault,* 290 Mass. 513, 516. *Jones* v. *Wood,* 330 Mass. 502, 506. *Trainor* v. *Interstate Constr. Co.* 187 Wash. 142 (driving into dust caused by a steam shovel, which completely obscured vision). See *Gambardello* v. *H. J. Seiler Co.* 335 Mass. 49 (diving into pool without looking). "[F]rom the facts which are undisputed or indisputable, or shown by evidence by which the plaintiff is bound, only one rational inference can be drawn and that an inference of contributory negligence." *Duggan* v. *Bay State St. Ry.* 230 Mass. 370, 379. *Weir* v. *New York, N. H. & H. R.R.* 340 Mass. 66, 70–71.

The case is similar to *Renaud* v. *New England Transp. Co.* 286 Mass. 39, 44, on which Sture relies, but distinguishable on its facts. Reference to the bill of exceptions shows that in that case there was an unresolved issue of the full effect of a fog bank on the driver's vision and in causing the accident.

4. Sture's negligence is not imputed to Elizabeth. *Bessey* v. *Salemme,* 302 Mass. 188, 210. *Weir* v. *New York, N. H. & H. R.R.* 340 Mass. 66, 72. It was not negligence in law to assume that Sture as he entered the cloud would continue his reduction of speed to the point of stopping when his vision ahead was completely gone. See *Ouillette* v. *Sheerin,* 297 Mass. 536, 540; *Wilson* v. *Birkenbush,* 305 Mass. 173, 177.

> *Exceptions of plaintiff Sture A. Hultberg overruled.*
> *Exceptions of plaintiff Elizabeth M. Hultberg sustained.*