## MADELINE J. BRADY *vs.* JOHN NESTOR.

Suffolk. March 5, 1986. — August 11, 1986.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Directed verdict, Judgment notwithstanding verdict. *Anti-Discrimination Law,* Employee, Offer of reinstatement, Damages. *Damages,* Under anti-discrimination law.

A plaintiff was precluded from recovering damages from her former attorney based upon the attorney's alleged negligence in failing to file timely complaints for unlawful discrimination in the termination of the plaintiff's employment, where the plaintiff failed, as matter of law, to sustain her burden of showing that she had acted in an objectively reasonable manner in rejecting the employer's offer of reinstatement and thus, but for the attorney's negligence, might have received an award of lost wages and other benefits from the employer. [188-190] HENNESSEY, C.J., dissenting.

Where an employee who alleged unlawful discrimination in the termination of her employment had rejected the employer's offer of reinstatement, the plaintiff's statement to the effect that, if she returned to her job, the discrimination against her would resume was not sufficient to warrant a finding that her rejection of the offer was objectively reasonable, so that she would have been eligible for an award of lost wages and other benefits. [190] HENNESSEY, C.J., dissenting.

°

CIVIL ACTION commenced in the Superior Court Department on December 11, 1979.

The case was tried before *James P. Lynch, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Erik Lund* for the defendant.

*Edward F. Haber (John J. Barter* with him) for the plaintiff.

O'CONNOR, J. In this attorney malpractice case, the jury awarded the plaintiff $30,000. The defendant attorney appealed from the judgment on several grounds. We transferred the case here on our own motion. We reverse the judgment on the ground

that the evidence did not warrant a finding of damages and order the entry of a judgment for the defendant.

The plaintiff's amended complaint sets forth two distinct claims. First, the complaint alleges that on May 9, 1975, the plaintiff was discharged from her employment at Itek Corporation (Itek) because she is a woman, and that the defendant negligently failed to file timely complaints of unlawful discrimination with the Equal Employment Opportunity Commission (EEOC), a Federal agency, and with the Massachusetts Commission Against Discrimination (MCAD). As a result, according to the complaint, the plaintiff was barred from obtaining a reinstatement order and an award compensating her for her lost wages and legal expenses, for which she is entitled to damages. The second claim is that on or about June 2, 1975, Itek advised the defendant of its willingness to reinstate the plaintiff to her former position, that the defendant did not communicate that offer to her, and that, if he had done so, the plaintiff would have returned to her former position without loss of pay or benefits. On that claim, the plaintiff seeks damages for her loss of pay and benefits resulting from her failure to return to work.

In his answer, the defendant admits that he agreed to file sex discrimination charges with the EEOC and the MCAD, and that he failed to do so. The answer also admits that on or about June 2, 1975, Itek advised the defendant that it was willing to reinstate the plaintiff to her former position. Contradicting the amended complaint, however, the answer asserts that the defendant communicated Itek's offer to the plaintiff and that she rejected it.

The parties' testimony at trial was consistent with their pleadings and, for the most part, need not be repeated here. It is enough to say that the plaintiff testified that Itek paid her salary until August 1, 1975, that the defendant had not told her about Itek's June 2, 1975, offer, and that, if he had told her, she would have accepted the offer because she only wanted her job back. The defendant's testimony, on the other hand, was

that he told the plaintiff about Itek's offer[1] and that she rejected it on the asserted ground that "she'd be going back into the same kind of circumstances that existed," and that there were "several people that she would be working for she didn't feel comfortable with."

Before the presentation of evidence bearing on damages, the judge submitted several special questions to the jury. In response to those questions, the jury determined, in the plaintiff's favor, that she had had a valid sex discrimination claim against Itek and the defendant had not filed it properly. But they also determined, in the defendant's favor, that the defendant had communicated Itek's reinstatement offer to the plaintiff and she had rejected it.

Following the announcement and recording of the jury's answers to the special questions, the judge and counsel briefly conferred about damages. During that discussion, defense counsel stated, "I don't see how the plaintiff can hope to proceed on a damage theory here when the plaintiff failed to mitigate her damages, and failed to accept the reinstatement offer. I think the damage issue becomes moot." The trial nevertheless resumed.

We discuss the subsequent procedural events in some detail because they bear on a contested matter — whether the defendant adequately preserved his right to appellate review of his motions for a directed verdict and for judgment notwithstanding the verdict on the ground of insufficiency of the evidence of damages. The plaintiff introduced the testimony of an expert concerning what the plaintiff's probable earnings would have been had she remained in Itek's employ. After the expert's testimony, the parties rested. The defendant then filed a written motion that the judge direct the jury to award the plaintiff only nominal damages in the sum of $1.00. The motion stated as grounds that the "plaintiff has failed to prove that her rejection of the reinstatement offer was reasonable, that she mitigated damages, and that she sustained any damages at all, including

---

[1] That offer, according to the testimony of a vice president of Itek, was open until August 1, 1975.

any damages relative to back pay, in the underlying action."
Referring to *Smith* v. *Ariens Co.*, 375 Mass. 620, 627 (1978),
and *Soares* v. *Lakeville Baseball Camp, Inc.*, 369 Mass. 974,
975 (1976), the judge denied the motion without argument,
stating that the case would be submitted to the jury "reserving
all rights as to legal questions regarding the adequacy of evi-
dence to prove damages, or any other such questions." In the
cases to which the judge referred, we articulated the principle
that, except when it is very clear that a directed verdict is
required, a trial judge should deny a motion for a directed
verdict and postpone the resolution of questions concerning
the sufficiency of evidence until the judge rules on a subsequent
motion for judgment notwithstanding the verdict pursuant to
Mass. R. Civ. P. 50 (b), 365 Mass. 814 (1974).

Following the jury verdict awarding the plaintiff $30,000,
the defendant filed a motion for judgment notwithstanding the
verdict and a memorandum in support thereof. This was con-
sistent with the judge's earlier reservation of the parties' rights
to raise legal questions concerning the adequacy of evidence
on damages. The motion set forth numerous grounds including
the following: the "plaintiff failed to prove that she reasonably
rejected the reinstatement offer (indeed, plaintiff's own evi-
dence was that she wanted to be reinstated to her former position
at Itek and plaintiff's husband testified that she had no concern
about returning to work for those persons at Itek who had
previously been her supervisors) . . . [and] plaintiff's rejection
of the reinstatement offer tolled any back pay liability as of
the date the offer terminated. Therefore, plaintiff's right to
claim damages terminated as of August 1, 1975, as of which
date she had no damages, or, at best, nominal damages." In
the memorandum in support of his motion for judgment not-
withstanding the verdict, the defendant specifically relied on
*Ford Motor Co.* v. *EEOC*, 458 U.S. 219 (1982), a case in
which the Supreme Court held that a discharged employee
claiming to be a victim of discrimination is not entitled to an
award for pay lost after he has rejected a reinstatement offer
unless there are "special circumstances" justifying his rejection
of the offer.

We are satisfied that the defendant adequately preserved his right to appellate review. We not only rely on the defendant's statement to the judge before evidence on damages was introduced, referred to above, but we rely also on the defendant's motion for a directed verdict, on the judge's reservation of the defendant's right thereafter to argue the sufficiency of the plaintiff's evidence on damages, and on the defendant's motion for judgment notwithstanding the verdict with its supporting memorandum making the same sufficiency of the evidence argument that the defendant makes here. Essentially, that argument is that by her own uncontradicted testimony the plaintiff suffered no losses prior to August 1, 1975, and that, in view of the jury's finding that the plaintiff rejected Itek's June 2, 1975, reinstatement offer, the plaintiff was not entitled to recover for wages or benefits lost after August 1, 1975, because as a matter of law she failed to sustain her burden to show that her rejection of Itek's offer was reasonable.

We agree with the defendant's contentions. Clearly, the evidence did not warrant a finding that the plaintiff sustained a loss prior to August 1, 1975. We do not understand the plaintiff to contend otherwise. Also, there was no evidence of compensable loss after August 1. In *Ford Motor Co.* v. *EEOC, supra* at 238-239, the Supreme Court held that, "absent special circumstances," an employer charged with discrimination in hiring can toll the continuing accrual of back pay liability under § 706(g) of Title VII, 42 U.S.C. § 2000e-5(g), by unconditionally offering the claimant the job previously denied.[2] The Court reasoned that such a rule comports with Title VII's dual policy of motivating employers to bring discrimination to an end, *id.* at 228-230, and of making the victims of discrimination whole. *Id.* at 230-239.

*Ford Motor Co.* v. *EEOC, supra,* demonstrates, at the very least, that, in order to be eligible under Title VII for an award

---

[2] As an example of "special circumstances," the Supreme Court said that if a claimant has been forced to move a great distance to find a replacement job, the trial court could weigh such a factor in deciding whether back pay damages accrued after rejection of the employer's subsequent reinstatement offer should be awarded to the claimant. *Id.* at 238 n.27.

of back pay accruing after rejection of a reinstatement offer, an employee must show that the rejection was motivated by circumstances making the rejection objectively reasonable. A simple showing that the employee fears further discrimination, without evidence of circumstances making that fear reasonable, does not satisfy the *Ford Motor Co.* v. *EEOC* rule.

Of course, as the plaintiff points out, the decision in the *Ford Motor Co.* case does not require that Massachusetts courts or the MCAD interpret G. L. c. 151B in a particular way. *Massachusetts Elec. Co.* v. *Massachusetts Comm'n Against Discrimination,* 375 Mass. 160, 165-167 (1978). But, that decision is very instructive. It declares a sound rule that advances the purposes not only of the Federal statute but of the cognate Massachusetts statute, G. L. c. 151B, as well. Therefore, we adopt the *Ford Motor Co.* rule as the law of this Commonwealth and we apply it to this case.

In order to recover damages, the plaintiff must show that her rejection of Itek's reemployment offer was objectively reasonable. The defendant argues that the plaintiff is bound by her own testimony to the effect that her reason for not accepting Itek's reinstatement offer was not that she anticipated that she would suffer from continued discrimination, but rather that she was unaware of the offer. See *Hultberg* v. *Truex,* 344 Mass. 414, 418 (1962); *Fraser* v. *Fraser,* 334 Mass. 4, 6 (1956). We need not consider that argument, however, because it is enough that we agree with the defendant's other argument that, in any event, the plaintiff failed to introduce sufficient evidence to show the reasonableness of her rejection of Itek's offer. The only evidence to which the plaintiff directs our attention is as follows: (1) the defendant's testimony that the plaintiff authorized him to reject the reinstatement offer on her behalf because "she'd be going back into the same kind of circumstances that existed, and merely postponing the circumstance, and that . . . there were several people that she would be working for she didn't feel comfortable with"; and (2) the contents of an Itek interoffice memorandum concerning what the defendant had said to Itek's vice president Farnell about the plaintiff's reasons for rejecting the reinstatement offer.

The plaintiff's reliance on the memorandum is misplaced. The record shows that the document was admitted in evidence only to show what the defendant said to Farnell, and "not for the truth of any purported implied statement" by the plaintiff. There is no justification, therefore, for reliance on that memorandum as proof of the reasonableness of the plaintiff's rejection of reemployment. Furthermore, the other piece of evidence on which the plaintiff relies is not sufficient to warrant a finding that the plaintiff's rejection of the reinstatement offer was reasonable. The plaintiff's statement to the defendant of her belief that discrimination against her would resume does not demonstrate the reasonableness of that prediction. Surely, the fact that "there were several people that she would be working for she didn't feel comfortable with" is not alone a sufficient reason for a reasonable person to have refused reemployment.

The plaintiff has not proved that she is entitled to recover for lost wages or other benefits. Also, there was no evidence that she incurred any legal expenses in connection with the claims for which she retained the defendant. Finally, although the plaintiff argues here that she is entitled to damages because the "defendant's negligence deprived [her] of a valuable claim for reinstatement," the judge's instructions to the jury were limited to the issue of back pay, and the plaintiff did not object to that limitation. In fact, the judge instructed the jury, without objection, that, in view of the jury's determination that Itek offered to reinstate the plaintiff, "what an agency might have done [with respect to a reinstatement offer] is sheer specula- tion." The defendant's motion for a directed verdict or his motion for judgment notwithstanding the verdict should have been allowed. The judgment is reversed. The case is remanded to the Superior Court for the entry of judgment for the defendant.

*So ordered.*

HENNESSEY, C.J. (dissenting). I would affirm. After review- ing the record, I conclude that all of the rulings of the trial judge

were free of error. The court in its opinion obviously, and I think incorrectly, interprets the record differently.

The court today holds that "objective reasonableness" is the standard to be applied when a discrimination plaintiff rejects an offer of reinstatement. This issue simply was not before the trial judge, and is not properly before this court on appeal. The law of the case as shown by the judge's instructions to the jury was that the plaintiff could recover back pay after August 1, 1975, if her rejection of Itek's reinstatement offer was "reasonable." The defendant did not object to this instruction, or request a charge of "objective reasonableness." The defendant first raised the issue of "objective reasonableness" (citing *Ford Motor Co.* v. *EEOC,* 458 U.S. 219 [1982]) in his memorandum on the motion for judgment notwithstanding the verdict. This came too late. The law of the case had already been established by the trial judge without assistance or objection from the defendant, and the jury had returned its verdict.

Thus, the law as presented to the jury was "reasonableness," and the question properly before this court on appeal is whether there was sufficient evidence on this issue to send the question of damages to the jury. In reviewing a denial of the defendant's motion for directed verdict and judgment notwithstanding the verdict, we must consider whether " ' anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.' " *Forlano* v. *Hughes,* 393 Mass. 502, 504 (1984), and cases cited. The defendant testified that his client rejected the reinstatement offer because "she'd be going back into the same kind of circumstances that existed," and because "there were several people that she would be working for she didn't feel comfortable with." The majority opinion, without explanation or citation to authority, concludes: "Surely, . . . [this] is not alone a sufficient reason for a reasonable person to have refused reemployment," *ante* at 190. I disagree. There was evidence that the plaintiff feared further discrimination, and it was properly a question for the jury whether this fear was "reasonable" under the circumstances.

Contrary to the above reasoning, the court today establishes for the first time that the concept of "reinstatement offers" should be treated under State law similarly to *Ford Motor Co.*, *supra*. Having strained to adopt *Ford Motor Co.* as the law of this Commonwealth under G. L. c. 151B (1984 ed.), the majority goes on to conclude that a directed verdict should have been entered for the defendant. Even if by some reasoning, and at this late date, the *Ford Motor Co.* rule should be applied in this case, at best the defendant is entitled to a new trial. As I read the record, a jury question is presented as to whether the plaintiff's rejection of Itek's reinstatement offer was "objectively reasonable."