## No. 19,187.

### DAVID NETTROUR, ETC. AND RAY NETTROUR *v.*
### J. C. PENNEY COMPANY, INC.
(360 P. [2d] 964)

Decided April 3, 1961.

Messrs. SMITH, PYLE, JOHNSON & MAKRIS, for plaintiffs in error.

Messrs. WOOD, RIS & HAMES, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

PLAINTIFF in error, David Nettrour, to whom we will refer as David, was five years of age at the time of the accident giving rise to this action. He seeks to recover damages for personal injuries sustained by him while riding on an escalator on the store premises of defendant in error, hereinafter referred to as Penney. The issues raised by the pleadings are the usual ones pertinent to actions to recover for personal injuries. Penney denied negligence on its part and affirmatively alleged contributory negligence and unavoidable accident.

At the conclusion of the testimony offered on behalf of David, counsel for Penney moved for dismissal of the action or for a directed verdict on the ground that the evidence was insufficient to warrant consideration of the issues by the jury. The trial court granted the motion and the action was dismissed.

There is but one question presented, namely — was there sufficient evidence introduced at the trial to establish a prima facie case upon which a verdict of the jury in favor of David could be sustained?

In passing upon a motion for a directed verdict the trial court must view the evidence in the light most

favorable to the party against whom the motion is directed. Every reasonable inference to be drawn from the evidence presented is to be considered in the light most favorable to such party. A motion for directed verdict can only be granted where the evidence, when so considered, compels the conclusion that the minds of reasonable men could not be in disagreement and that no evidence, or legitimate inference arising therefrom, has been received or shown upon which a jury's verdict against the moving party could be sustained. *Brent v. Bank of Aurora*, 132 Colo. 577, 291 P. (2d) 391; *Gray v. Turner*, 142 Colo. 340, 350 P. (2d) 1043.

The store operated by Penney occupies several floors with a number of departments on each floor. Merchandise offered for sale includes men's, women's and children's clothing. The customers are invitees while on the store premises. For the accommodation of its customers escalators are employed to carry passengers from one floor to another.

On April 2, 1955, the mother of David went with him and certain others to the Penney store intending to purchase, among other things, some clothing for David. They started from the third floor to the second floor on the escalator. The escalator consists of moving steps which travel at a speed of ninety feet per minute. The steps are guarded by side walls at the top of which are movable balustrades or hand rails for passengers to use in keeping their balance. The stairs being movable and the side walls immovable there is a clearance space between the steps and the walls to prevent friction and wearing.

As David and his mother stepped on the escalator he was by her side and to her right, and she was holding his hand. There was testimony that the mother was holding on to the left-hand rail, and it started and stopped and then started and stopped in a jerking sort of way. While her attention was thus attracted to the left-hand rail she released David's hand. Upon hearing

him call out to her she turned and saw that he was in a position on the escalator as if he had fallen, and his right index finger was engaged or caught between the moving step and the side wall of the escalator, which was quite crowded, and she and others began calling out "stop the escalator." She tried without avail to extricate his finger from where it was caught. No one stopped the escalator and realizing that they were nearing the bottom she pulled as hard as she could and disengaged the finger. The force of the pull threw both her and David to the steps at the foot of the escalator and others followed, falling over them. Eventually the escalator was stopped and David was taken to the first aid room and from there to the hospital. Medical testimony was received as to the nature and extent of his injuries.

It is disclosed by the evidence that the emergency stop button on the escalator was located on the lower curved section of the newel, about fifteen inches from the floor. The evidence also shows that there were no warning or directional signs on or near the escalator as to the location of such button or how it was to be used in case of emergency. In order to see or find it necessitated placing one's self in a squatting position.

Introduced in the evidence was a provision of a city ordinance which provides that:

"There shall be an emergency 'stop' button or other type of switch accessible to the public, conspicuously located at the top and at the bottom of each escalator runway.

"The operation of either one of these buttons or switches shall cause the opening of the power circuit to application of the brake and stoppage of the escalator. It shall be impossible to start an escalator by means of these buttons or switches.

"These buttons or switches shall be marked 'ESCALATOR STOP BUTTON' or 'ESCALATOR STOP-SWITCH.' "

The evidence establishes that Penney is the owner of

the escalator and that maintenance and inspection thereof is handled by contract between Penney and the manufacturer. This contract calls for a detailed annual inspection as well as less extensive inspections at intervals of two or three times each week. The evidence further establishes that one of the items involved in a proper inspection is determination of the amount of space between the moving steps and the immovable side walls. The experts testified that a space ranging from 1/16 to 1/8 of an inch between the steps and the side walls is permissible. There was evidence that on March 29th and 30th, before the accident, the escalator was inspected and found to be in working order; however it should be noted that these inspections with relation to the space between the steps and the side walls were not made by rule or measuring device but were calculated by the eye while the inspector was a passenger on the escalator. The testimony further discloses that the bone in David's index finger was 1/4 inch in diameter.

It was argued by counsel for David that the escalator was functioning as a common carrier and that Penney was obligated to exercise a degree of care applicable to those persons operating as common carriers. Counsel for Penney argue that in the operation of the escalator it was not a common carrier and that only ordinary care was required of it to prevent the injury suffered by David.

Upon these contentions of counsel we think it sufficient to make reference to 65 C.J.S. § 44 b. p. 520:

"A customer who enters a store for the purpose of trade occupies the status of an invitee or business visitor, * * *."

From the same volume at § 45 a. we quote the following:

"The owner, occupant, or person in charge of property owes to an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety, com-

mensurate with the particular circumstances involved, * * *." This general rule is applicable to infants as well as adults, as shown by the following statement appearing in 65 C.J.S. § 52, p. 548:

"The rule requiring the owner or person in charge of property to keep it safe for invitees, as discussed supra § 45, applies to infant invitees. Since the characteristics of children are proper matters for consideration in determining what is ordinary care with respect to them, there may be a duty to take precautions with respect to children of tender years which would not be necessary in the case of adults or children who have reached an age when they are able to understand, appreciate, and avoid danger. * * *"

█ The rule applicable here was considered at some length in the case of *Kataoka v. May Department Stores Co.*, 60 Cal. App. (2d) 177, 140 P. (2d) 467, from which we quote the following:

" 'The term "ordinary care" is a relative one, and the standard by which it is to be measured varies * * * with the circumstances attending each particular case.' (19 Cal. Jur. 579; Lolli v. Market St. Ry. Co., (1941) 43 Cal. App. 2d 166, 168, 110 P. 2d 436.) 'Care must be in proportion to the danger to be avoided and the consequences that may reasonably be anticipated as the result of conduct, and the circumstances may be such that far greater care is exacted from one party to an action than from the other.' (19 Cal. Jur. 579, 580; see also Hatzakorzian v. Rucker-Fuller Desk Co. (1925) 197 Cal. 82, 98, 239 P. 709, 41 A.L.R. 1027.)

"One of the factors affecting the care to be exercised may be the presence of children on the scene. In this case the accident happened in the infants' and children's wear department of a large store. While there is no evidence of the number of children visiting that department, it is clear that children under the age of six years were invited to go there and that the defendant storekeeper should have expected their presence. Children

of such an age ordinarily could not appreciate the danger of putting their fingers in or around moving machinery, but would be attracted by it, especially if it were bright, and would be likely to investigate with their fingers anything to which they were attracted.

" 'A child of immature years is expected to exercise only such care as pertains to childhood, and all persons dealing with such a child are chargeable with such knowledge. As a result, one dealing with children is bound to exercise a greater amount of caution than he would were he dealing with an adult.' (Hernandez v. Murphy, (1941) 46 Cal. App. 2d 201, 208, 115 P. 2d 565.) * * *"

In *J. C. Penney Co. v. Livingston* (Ky.), 271 S.W. (2d) 906, the Court of Appeals of Kentucky considered a case comparable to the one disclosed by this record and after reciting that the clearance between the moving steps and the wall of an escalator was not supposed to exceed 3/32nds of an inch, stated the following:

"Yet, in this case it is established that plaintiff's hand was caught in the machinery of the escalator while he was riding where he was expected to ride. It seems to us this creates a logical inference that there was a defect in the escalator which made it unsafe for small children; and if the escalator was unsafe for children to use, then defendant was negligent in making it available to children."

For other cases supporting this view see: *Burdine's Inc. v. McConnell,* 146 Fla. 512, 1 So. 2d 462 (1941); *Graves v. May Department Stores Co.,* 153 S.W. 2d 778 (Mo. App. 1941); *Jablonski v. May Department Stores Co.,* 153 S.W. 2d 786 (Mo. App. 1941); *Reynolds v. May Department Stores Co.,* 127 F. 2d 396 (8th Cir. 1942).

The evidence in this case, viewed in the light most favorable to the plaintiff, presents issues upon which reasonable minds might differ and from which a jury could reasonably conclude that Penney, or persons acting on its behalf, failed to exercise reasonable care in

the maintenance and operation of the escalator. The case should have been submitted to the jury under proper instructions.

The judgment is reversed and the cause remanded for a new trial.

MR. JUSTICE DAY and MR. JUSTICE FRANTZ concur.